## AMERICAN STANDARD JEWELRY COMPANY v. HILL.

### Opinion delivered March 29, 1909.

1. CONTINUANCE—ABSENCE OF DEFENDANT.—It was within the trial court's discretion to require plaintiff either to submit to a postponement of the case on account of the sickness of one of the defendants who is shown to be a material witness or to admit that if present he would testify to the state of facts set forth in the motion for continuance, even though the motion was not verified by affidavit. (Page 82.)

2. SALES OF CHATTELS—IMPLIED WARRANTY OF SALABILITY.—When a manufacturer offers his goods for sale without an opportunity on part of the vendee to make inspection, the vendee necessarily relies on the former's knowledge, and the law implies a warranty that the articles shall be merchantable and reasonably fit for the purpose for which they were intended. (Page 82.)

3. SAME—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.—Where the vendor of a bill of goods contended that all of the goods were up to the contract, and the vendees that none of them were, and there was no

evidence that part of the goods was of the quality ordered and part not, it was not error to refuse to instruct the jury that if some of the goods were as represented and some not the vendor was entitled to recover for so much as were found to be as represented. (Page 83.)

4. SAME—RETURN OF GOODS.—Where the defense in an action for goods sold to merchants was that the goods were not salable, it was not error for the court to say to the jury that if they found for the defendants "the court would make the proper orders for the return of the jewelry" to the plaintiff. (Page 84.)

5. INSTRUCTIONS—SHOULD NOT BE ABSTRACT.—It was not error to refuse a correct instruction which was not applicable to any issue before the jury. (Page 84.)

6. SALES OF CHATTELS—PERFORMANCE—BURDEN OF PROOF.—Where a vendee of goods refused to receive them, and is sued for their price, it was not error to charge the jury that the burden is on the vendor to prove that he has performed his part of the contract. (Page 85.)

Appeal from Sebastian Circuit Court; *Daniel Hon,* Judge; affirmed.

*C. T. Wetherby,* for appellant.

1. The motion for continuance was not verified, and it was error to require appellant to admit the testimony of Hill or submit to a continuance. Kirby's Digest, § 6173.

2. The contract is severable, and the 6th instruction requested by appellant should have been given. 88 S. W. 842.

3. No warranty is implied where goods are sold by sample, except that they shall be equal in quality to the sample. The burden was on appellees, and their 2d requested instruction should not have been given. 11 Enc. of Ev. 526; 68 S. W. 594; 83 S. W. 230.

*Joseph M. Spradling* and *George W. Dodd,* for appellees.

1. Hill was sick and unable to attend. The court might properly have granted a continuance for that reason, without giving appellant the option to admit his testimony. No abuse of discretion.

2. True, the contract shows each item has a separate price, but it is for a complete assortment, and contains no such warranty and agreement to inspect at once on delivery as is contained in the contract sued on in *Duffie* v. *Pratt,* 76 Ark. 74. This contract is entire and not severable. 11 Enc. of Ev. 528

and cases cited; 2 Parsons on Contracts, 9th Ed., 672; *Id.* 4th Ed., 31; 5 Met. 452; 22 Ark. 158.

3. The court properly charged the jury that the burden was on appellant to prove that the goods were as represented. 24 Am. & Eng. Enc. of L. 2d Ed. 1131. Warranty is implied where no opportunity is afforded for inspection before delivery. 73 Ark. 470; 83 Ark. 15; 11 Enc. of Ev. 531; 22 Tex. 270; 100 Ga. 588; 48 Ark. 325; 53 Ark. 155; 72 Ark. 343; Benjamin on Sales, 656.

McCULLOCH, C. J. The plaintiff, American Standard Jewelry Company, instituted this action at law against R. J. Hill & Son to recover the price of a lot of jewelry sold and delivered to them under written contract.

The contract, after setting forth an itemized list of the articles sold, giving separate prices of kind, aggregating the total sum of $180, contains the following clauses:

*"Warranty.* Any article of jewelry shipped by us, which fails to give entire satisfaction any time within five years from date of purchase, must be returned to us, and we will repair or furnish a new duplicate article in its place.

*"Goods Exchanged.* Any jewelry shipped by us not selling readily or which may be unsatisfactory for any cause may be exchanged for any jewelry in our stock, if returned to us for exchange within one year from date of purchase.

*"Important Conditions.* In consideration of the conditions under which we sell our goods, we cannot accept countermands, and the purchaser hereby agrees not to countermand this order, either before or after it is received by us. This contract contains all the condition and agreements between the parties, and no agreement is binding unless expressed in original order received by us. Purchaser hereby acknowledges receipt of duplicate hereof. Jewelry is shipped by express, showcase by freight from distributing point or factory, at our option, and when we deliver goods to transportation company in good order they become the property of the purchaser, subject to all the conditions and safeguards contained herein, and can not be returned for credit. Purchasers pay all transportation charges. All goods are shipped at our earliest convenience.

*"Sales. Guarantied.* We guaranty that the purchaser will sell a quantity of jewelry in one year which at retail prices will equal at least one and one-half times the amount of this order. If the sales are less than the above, we agree to buy back for cash, at the purchase price, all goods bought of us and remaining on hand at the end of the year. This guaranty is given on condition that purchaser will keep this jewelry displayed for sale one year in the show case furnished by us, use best efforts to push the sale of the same, and furnish us every month, between the first and fifth of the month, an itemized list of all goods on hand.

"Our guaranty of sales does not imply that we ship our goods on consignment to be paid for as sold. For amount and time of payments, see the following terms of settlement:

"All long time accounts must be closed by acceptances. This order is payable in six equal payments, due in two, four, six, eight, ten and twelve months from date of invoice, provided purchaser sends us promptly on arrival of jewelry his six acceptances for amounts and time of above payments, payable to our order at Detroit, Michigan.

*"Cash.* If acceptances are not sent as above, terms are cash; five per cent. discount if paid in full promptly on arrival of jewelry."

It is alleged in the complaint that the jewelry and showcase were shipped to the defendant by common carrier in accordance with said contract, and that defendant had received the jewelry but refused to execute the acceptances or pay the price in accordance with the terms of the contract.

Defendants answered as follows: "That the contract with an agent of the plaintiff to purchase certain articles of jewelry mentioned and cited in the written contract exhibited as a part of the complaint. That the said agent fraudulently and falsely represented to defendants that said jewelry was of the kind, character and quality specified in said contract and would readily sell to defendant's customers; that defendants relied upon representations of the said agent, and that the same were fraudulent, and that the jewelry was made of cheap metals and was not of the kind, character and quality specified in said contract, and that defendants refused to pay for same and offered

to return same to the plaintiff and in this answer offer to return the same. The defendants charge that the plaintiff well knew that said jewelry was not what it was represented to be; and that it was cheap, shoddy and almost valueless, and to put the same upon the market would be detrimental to defendant's business as merchants; that it would be a fraud upon defendant's customers."

A trial before jury resulted in verdict and judgment in favor of defendants, and the plaintiff appealed.

The first assignment of error is that the court improperly required the plaintiff either to submit to a postponement of the case on account of the sickness of R. J. Hill, one of the defendants, or to admit before the jury that he would testify, if present, to the state of facts set forth in the motion for continuance. It is stated in the motion that said defendant was sick and unable to attend the trial, but would, if present, testify to said facts. The motion was not verified by affidavit, and it is contended that it should not have been granted. Even if a decision of the court granting a continuance of a case could, under any circumstance, be held to be reversible error, it is not error to postpone a case on account of unavoidable absence of one of the parties, especially where such party is a material witness. That is a matter within the discretion of the court, and no error of the court can be predicated upon it when the postponement is granted, even without a strict showing in accordance with the statute regulating continuances on account of the absence of witnesses.

Defendants adduced testimony tending to show that plaintiff's traveling salesman who made the sale to defendants showed them samples of some of the jewelry at the time he made the sale, and that the jewelry shipped to them did not come up to the samples in quality or to the contract, that it was worthless and not merchantable. The evidence justified a finding by the jury that this was true, and the court submitted this issue to the jury under appopriate and correct instructions.

The following is one of the instructions given at the request of plaintiff, and clearly defines the issue:

"4. The court tells you that if you find from the evidence that the jewelry delivered to the defendants under the con-

tract sued on was of the same grade shown by the agent as samples when the sale was made, and as described in the contract, then, if any of said jewelry proved unsatisfactory, the defendant cannot resist the suit by showing that the same was unsatisfactory, unless they returned the same under the terms of the contract."

In the case of *Main* v. *Dearing,* 73 Ark. 470, we said: "Ordinarily, the law implies no warranty of quality, leaving that a matter of contract between parties, but there is an exception to this rule as thoroughly recognized as the rule itself. When a manufacturer offers his goods for sale, where the opportunity of inspection is not present before the purchase, the vendee necessarily relies on his knowledge of his own manufacture. In such cases the law implies a warranty that the article shall be merchantable and reasonably fit for the purpose for which it was intended."

The following from Benjamin on Sales (§ 656) was quoted with approval: "He cannot, without warranty, insist that it shall be of any particular quality or fitness, but the intention of both parties must be taken to be that it shall be salable in the market under the denomination mentioned in the contract. The purchaser cannot be supposed to buy goods to lay them on a dunghill."

The court refused to give the following instruction requested by plaintiff: .

"6. You are instructed that the instrument upon which this action is founded is what is known as a severable contract, and it is therefore necessary for the defendants to prove that each and every item of goods received by them from plaintiff was not as represented in the contract before a verdict can be rendered for the defendants. Therefore, if you should find that some articles were as represented and some of them were not, then you should give a verdict in favor of the plaintiff for the contract price of such as you find were as represented."

According to the rule announced by this court in *Duffie* v. *Pratt,* 76 Ark. 74, the contract in the present case was severable. A comparison of the two contracts reveals no points of distinction. The above instruction was therefore correct, in the abstract, and should have been given if there had been any evi-

dence to base it on. But there was no evidence that part of the jewelry was good and part bad. Defendant's testimony was to the effect that it was all worthless, unmerchantable and below the standard of the contract, and the plaintiff's testimony was that it was all up to the contract. There was no middle ground, and the jury could not have done otherwise than accept the version of one side or the other. It is true that one of the jurors inquired of the court whether or not they could bring in a verdict for a less amount than sued for, if they were satisfied that some of the jewelry was of an inferior quality. But this only indicated, to some extent, the view of that particular juror, and did not justify the court in submitting an issue contrary to the contention of both parties. The court replied to this inquiry by stating that "if the jewelry was of the grade and kind ordered, they would find for the plaintiff, and if it was of a different or inferior grade to that ordered by the defendants and not marketable, the jury would find for the defendants."

Error of the court is assigned in stating to the jury, in the same connection, that if the jury found for the defendants "the court would make the proper orders for the return of the jewelry." We can see no possible prejudicial effect from this. The statement did not in the remotest degree indicate an opinion of the trial judge as to the facts of the case. The jewelry remained in the hands of the defendants, and the court doubtless meant only to relieve the minds of the jurors of any idea that the defendants could retain it if the verdict should deny the plaintiff the recovery of the price. The remark was equivalent to saying that the defendant could not keep the jewelry if the verdict should be favorable to them.

The court refused to give an instruction requested by plaintiff to the effect that the delivery of the showcase to a public carrier properly consigned to defendants constituted a delivery to defendants, and this is assigned as error. The instruction was abstractly correct, but its refusal was not prejudicial. There was no issue before the jury as to refusal to accept the showcase. No charge was made in the contract for that article, but it was sent without price for use in displaying the goods on sale. The sole issue before the jury was whether or not the

defendants had the right to reject the jewelry. That instruction was calculated to mislead the jury, and it was properly refused.

The court gave the following instruction over plaintiff's objection:

"2. The burden is upon the plaintiff to prove by a fair preponderance of the evidence that he has performed his part of the contract, and delivered the goods of the kind, character and quality specified in the contract, before he can recover the purchase price from the defendants, unless you find from the evidence that said goods were received without objection."

It is contended that the effect of this instruction was to tell the jury that the burden was not on the defendants to prove an alleged breach of warranty. Such is not the purport of the instruction. It is undoubtedly the correct rule that a vendee who alleges and relies on a breach of warranty must prove it. But the goods in this case were never accepted by the vendee, and this action is an effort to compel them to pay the price, notwithstanding their refusal to accept. The complaint alleges, and the answer denies, that the plaintiff performed the contract, and on this issue the burden was on the plaintiff to prove that goods called for in the contract were tendered. It is not sufficient, in this state of the pleadings, for the plaintiff merely to show that a lot of jewelry was shipped, without showing that it answered the requirements of the contract.

It is contended also that the defendants retained the goods an unreasonable length of time before examining and rejecting them, but we are of the opinion that under the circumstances proved this question was properly submitted to the jury.

Upon the whole, we find no prejudicial error, and the judgment is therefore affirmed.