MILES F. BIXLER COMPANY v. J. K. HALL LUMBER COMPANY.

## Opinion delivered April 29, 1918.

1. SALES—IMPLIED WARRANTY.—The law implies a warranty that articles sold to be resold by the purchaser, shall be merchantable and reasonably fit for the purposes for which they were intended.

2. SALES—ACTION FOR PURCHASE PRICE—RETURN OF GOODS BY BUYER.—A. sold jewelry to B. to be resold, and also gave B. a show case in which to exhibit the jewelry. B., after paying a portion of the purchase money, refused to complete the payment, returned the jewelry to A. but kept the show case. The amount paid was more than the value of the show case and of the articles sold. A. declined to accept a return of the jewelry and sued for the balance of the purchase price. Held, a verdict for B. would be sustained on appeal.

Appeal from Hot Spring Circuit Court; *Scott Wood*, Judge on exchange; affirmed.

*Rogers & Barber,* for appellant.

1. No fraudulent representations were made or proven. The statements of the agent were expressions of opinion and not fraudulent. 84 Atl. 146; 5 N. W. 736; 37 So. 422; 112 Ill. App. 329; 160 Pac. 495; 157 *Id.* 941; 88 S. E. 348; 143 Pac. 998; 14 Ga. App. 803; 88 S. E. 355; 33 Ill. 354; 93 Ind. 276; 124 Ark. 555; 86 Ill. 125; 197 Ill. App. 101; 95 Ark. 131; 31 *Id.* 170; 15 L. R. A. (N. S.) 409; 86 Ill. 125.

2. The goods were sold under a written contract and the purchaser got exactly what he ordered. There was no fraud, and parol testimony was inadmissible. Jones on Ev., § § 434-5; 95 Ark. 131; 94 *Id.* 130; 126 S. W. 924.

3. The rescission must be *in toto.* There was no offer to return the show case. 168 Ala. 295; 53 So. 324; Anno. Cas. 1912 A 657; 26 So. 290.

*J. C. Ross,* for appellee.

Fraud was proven—not mere puffing fraudulent misrepresentations—material and calculated to deceive. The right to rescind in cases of fraud like this is clear. 11 Ark. 58; 27 *Id.* 244; 99 *Id.* 438. The value of the show case was paid as well as the jewelry sold. The balance was returned. The judgment is right.

STATEMENT OF FACTS.

Appellant sued appellee for $165 for a balance alleged to be due it for jewelry sold to appellee. Appellee entered into a written contract with the salesman of appellant for the purchase price of a lot of jewelry for $198. The contract contained an itemized list of the articles sold and the price of each article. A show case three feet high by three and a half feet long, twenty inches deep, with sliding glass doors, was to be furnished for the purpose of displaying the jewelry. The contract did not contain any separate price for the show case. The contract contained a provision for the privilege of exchanging any article purchased at any time within eighteen months. It also contained a clause providing that if for any cause an article should prove to be unsatisfactory, it should be returned and the seller would replace it with a new one free of charge. The contract was sent to appellant by its salesman and was accepted by it on May 28, 1915.

According to the testimony of witnesses for the appellant, the goods delivered on the contract were tested by acid tests and showed that they were free from defects; that the goods sent to appellee were of the kind, quality and design stated in the contract; that where the order called for rolled gold plate or gold filled goods, goods of that character were sent.

John Hall, a son of J. K. Hall, testified that he signed the contract for the jewelry and that the reason he did so, the salesman told him that he had made the contract with J. K. Hall and that the latter had directed him to tell his son to sign the contract for him; that he sold some of the jewelry and that it showed brass or turned black after two days' use; that the jewelry was absolutely worthless.

Other witnesses testified that they had bought some of the jewelry or had seen some that had been bought by others; that the jewelry would show brass or turn black after it had been worn two days; that it was absolutely worthless.

In the fall of 1915, appellee returned the jewelry to appellant by parcel post and notified appellant of its return. Appellee had already paid $31.75 on the bill. Appellee notified appellant that the jewelry was absolutely worthless and was returned on that account; that the amount paid by appellee to appellant was more than enough to pay for the jewelry which had been sold and for the show case which had been kept by appellee; that the show case was not worth more than eight or ten dollars. Appellant refused to receive the goods back and wrote appellee to that effect. Several letters were exchanged between the parties and appellant in each of them refused to receive the jewelry and insisted upon payment of the purchase price.

The jury returned a verdict for appellee and the case is here on appeal.

HART, J., (after stating the facts). It is insisted by counsel for appellant that the court erred for two reasons, in refusing to direct a verdict in its favor.

First, it is insisted that the evidence does not establish fraud in the procurement of the contract and that by its terms, appellee was required to exchange articles which proved to be unsatisfactory before he could defend a suit for the purchase price for failure of consideration. It appears from the record that appellant was engaged in manufacturing jewelry and selling it to its customers from samples carried along by its traveling salesman. In such cases the law implies a warranty that the articles shall be merchantable and reasonably fit for the purpose for which they were intended. *Main* v. *Dearing,* 73 Ark. 470; *American Standard Jewelry Co.* v. *Hill,* 90 Ark. 78, and *Iowa City Bank* v. *Biggadike,* 131 Ark. 514.

Second, it is claimed that the court should have directed a verdict for the appellant because the appellee did not return the show case. This is in application of the rule, that, before a party defrauded in a contract may rescind the contract and receive back what he paid, he must re-

turn the goods bought, or offer to return them. It appears from the record in the present case that appellee sent back all the jewelry which he had not sold but kept the show case. According to the evidence adduced in favor of appellee he had paid appellant $31.75. This was more than the value of the show case and of the articles which he had sold. Hence he wrote appellant that he was returning the unsold jewelry and would keep the show case for the amount which he should recover back from appellant. Appellant absolutely refused to receive the jewelry and notified appellee that it would not do so. Appellant claimed that appellee had no right to rescind the contract and notified him that it would proceed against him for the purchase price of the jewelry.

Under these circumstances it would have been a vain and useless thing for appellee to have tendered appellant the show case. The written contract contained a list of the articles sold to appellee and the price of each article. Appellee paid appellant $31.75 before he discovered the jewelry was worthless. It was shown that this was a greater amount than the value of the goods so sold. If appellee was entitled to rescind the contract, he would also be entitled to recover back the difference between the amount paid to appellant and the value of the articles sold upon the return or offer to return of the unsold articles. Appellee proposed to keep the show case for the sum he was entitled to receive back. Appellant absolutely refused to treat with appellee and declined to accept the goods returned. Therefore it can not now complain that a verdict should have been directed in its favor because appellee failed to return all the articles received by him under the contract.

It follows that the judgment must be affirmed.