4-4567

Opinion delivered March 29, 1937.

*Moore, Gray, Burrow & Chowning,* for appellant.
*H. P. Smith,* for appellee.

MEHAFFY, J. On November 23, 1935, James McCrea, Jr., about 16 years of age, made application to the appellant for insurance, and thereafter the appellant issued a policy for $500, bearing date, December 2, 1935. The insured died on January 12, 1936. Proof of death was made, and James D. McCrea, Sr., the beneficiary in the policy, requested payment, and the appellant denied liability.

On March 19, 1936, this action was instituted by the appellee for judgment for $500, 12 per cent. damages, and a reasonable attorney's fee. Appellant answered, denying that the policy was in force and effect at the time of the death of James McCrea, Jr., and pleaded as a defense, the following provisions of the policy:

"A. Limitation of Insurance—Within two years from date of issuance of this policy, the liability of the company under same shall be limited, under the follow-

ing conditions, to the return of the premium paid thereon: (1) If the insured before its date has been rejected for insurance by this or any other company, order or association, or has been attended by a physician for any serious disease or complaint; or has had before its date any pulmonary disease or chronic bronchitis, or cancer, or disease of the heart, liver or kidneys; * * *

"B. Alterations, Waivers and Premiums—This policy shall not take effect prior to the date of same, nor unless the first premium shall have been paid in cash, and the contract delivered and accepted during the lifetime and sound health of the insured. And if the insured is not in sound health at the time of the delivery of the policy it shall be void, whether the condition of bad health had its origin prior or subsequent to the application for this policy, or was not known to the insured. Knowledge of the agent shall not be taken to be knowledge of the company. * * *".

The evidence introduced by appellee showed that at the time the application for the policy was made, the insured was apparently in good health, doing hard work, hauling heavy wood, and using a drag saw, and so far as appellee knew, or the other witnesses who were with the insured frequently, the insured appeared to be in good health. He had some trouble with his tonsils, and, on November 9, 1935, insured's mother took him to Dr. Murphy. Dr. Murphy testified that he examined him and advised the insured and his mother that he had heart trouble, and that he prescribed for him for heart trouble. The two prescriptions, however, were introduced, and there was nothing in them for the heart. The druggist was also introduced, and he said that he did not fill any prescription for Dr. Murphy for heart trouble.

On December 12, 1935, Dr. Dalton examined insured. He testified that he examined James McCrea, Jr., and that at that time he had affected tonsils and a bad heart, and he prescribed for him. Both physicians testified that his tonsils should be removed, but that it should not be done until he had been treated, and until his condition improved. Dr. Dalton testified that it would take six or seven weeks to develop a heart trouble, and that

it could not be done overnight. He, however, said that that was a mere opinion, and there was no way to tell when the heart trouble began. It was a question of fact for the jury to determine this question.

The appellant pleaded fraud and false representations, but the evidence shows conclusively that no fraud was committed or no false representations made. The agent who secured the application testified that McCrea was apparently in good health, and that at the time he took the application, he did not believe, and did not believe when he testified, that either of the McCreas made any false statements. The evidence shows that McCrea acted in good faith, the agent had solicited insurance a number of times, and finally the appellee dropped his insurance in another company and took policies in this company, not for himself, but for his children, and he still has two policies in this company.

We, therefore, think that the only question in the case is whether the insured was in good health at the time the policy was delivered. Appellant requested the court to give the following instruction: ''If you find from the evidence in this case that James D. McCrea, Jr., was not in sound health at the time of the delivery of the policy involved in this suit, then your verdict will be for the defendant.''

The court refused to give this instruction, but gave the following, over the objection of the appellant: ''Gentlemen of the jury: I have written the words 'yes' and 'no' if you believe that the deceased was diseased with heart trouble before the policy was issued, you will answer that question 'yes,' and if you believe that he was not diseased with heart trouble at the time the policy was issued, then you will answer that question 'no'.''

There was a verdict and judgment for $500, together with attorney's fee of $75 and 12 per cent. statutory penalty. This appeal is prosecuted to reverse this judgment.

The court's instruction authorized a recovery if the deceased did not have heart trouble at the time the policy was issued, and confined the issue to heart trouble alone. The instruction requested by the appellant stated that if

McCrea was not in sound health at the time of the delivery of the policy the verdict would be for the defendant. It was error to give the instruction the court gave, and to refuse to give the instruction requested by appellant.

Provision "B" of the policy above set out provides that the contract must be delivered and accepted when the insured is in sound health. It states: "and if the insured is not in sound health at the time of the delivery of the policy it shall be void." Therefore, under the express terms of the policy provision, in order to be valid, the policy must have been delivered when insured was in sound health.

This court recently said: "The provisions of the policy set out above clearly made the answers relating to the health of the insured warranties and not mere representations. They were in the nature of an absolute agreement and not statements of belief. This construction of the contract leaves only one question to be determined here, and that is whether the undisputed evidence reflects that the insured was in bad health when the application for the policy was made." *Springfield Life Ins. Co.* v. *Slaughter,* 183 Ark. 692, 38 S. W. (2d) 13.

The policy in the instant case expressly provides that the insured must be in sound health when the policy is delivered, and not when it is issued. A policy might be issued one day, and delivered on that day or on a different day. The record in this case does not show when the policy was delivered. The agent testified that it usually took about a week for the delivery of the policy after the application was sent in. The evidence in this case shows that the policy was delivered by mail. When a policy is delivered by mail it is said to be delivered when it is deposited in the mails, duly directed to the insured at his proper address, and with postage prepaid. If delivered by mail, it is essential that the envelope containing the policy shall be stamped and addressed to the insured to his proper post office or residence. 32 C. J. 1127.

This policy, of course, was actually received by the insured. The policy may or may not have been issued on

the day that it bears date. It might have been deposited in the mails the same day it was issued, or at a later time; but it was necessary to submit the question of his sound health at the time of the delivery of the policy, and not at the time the policy was issued.

For the error in giving the instruction which the court gave, and its refusal to give the instruction requested by the appellant, above set out, the judgment is reversed, and the cause remanded for a new trial.

SMITH and BUTLER, JJ., concur in judgment.